Fudge Undtrivood
delivered the opinion of the Court.
Judge Nicholas did not sit.
Previous to the 11th of August, 1817, Garner and Catron had been engaged boring for salt water, but not having succeeded according to their wishes, on that day they entered into an article of agreement with Beaty- It was in substance stated that Beaty should continue boring in the same well, until lie nad gone down 600 feet, unless he should sooner obtain a sufficient quantity of salt water. Garner and Catron bound themselves to convey t» Beaty one-half of the well and the 80 acres of land on which it was situated. In case salt water was obtained the parties agreed £<to be at equal expenses in proportion to their interest in the well, in providing mettle, building furnaces, and making improvements for the manufacturing of salt, and in the same proportion arc to draw their respective shares of profit; andón all subjects, when any improve' *224 merit or plan is to he adopted for the use or benefit of the business, each party is to have a vote in proportion to the interest he holds, and a majority in the weight of interest, shall at all times control.” It was further agreed that neither party should sell dr give away his interest in the well or any part thereof to any person who would be disagreeable to the other partners, or without their consent in writing obtained from each. Beaty sunk the well 500 feet. He let Evans have half his interest. It does not appear whether with or without the written consent of Garner and Catron. It seems that on the 7th of August, 1816, Garner, Catron and Hawk entered into an agreement, by which the two former agreed to let Hawk have an interest in the well of one-sixth part, he agreeing to defray, in future, one-sixth of the expense incident to boring, &c., and in case a sufficient quantity of salt water was obtained to justify working the well, then he .was to pay one-sixth of the expenses previously incurred. It seems that Hawk agreed to surrender one-half of his interest upon Beaty’s entering into the contract aforesaid. Thus if the interest in the well and land on which it was situated, were divided into 24 parts, Beaty; or Beaty and Evans would be entitled to 12 parts, Hawk, to 2, and Garner and Catron to 5 each. After Beaty had sunk the well a considerable distance, but before he had gone the 500 feet,<which he afterwards completed, the parties, or at least a majority in the “weight of interest,” determined to make the necessary preparation for the manufacture of salt, supposing that the quantity and quality of water obtained would justify it. Accordingly they commenced sinking ahead for the well, in which, with other improvements, a considerable expense was incurred.
Beatv filed this bill against Garner, &c. praying that an account might be taken of the expenses incurred by each partner, and that they who had not paid their just portions might be compelled to pay those who had paid more than their portions.
The court appointed auditors to state the accounts, and to report them to the court, This was done.
one partner m^3r’t>waaI\)y aa0ther°ntcs» tifyasto the rectitude of aJ5.aa°°X gainst the by the Fu1^N aa a witness. But the testimony of a as a wjtn0SS) will be in-founts which may be set up a-gaj^stor to augment his own account other partners who did not call for his testimony
The evidence to sustain a appearTuoa the record, Tj'ñuot^evUo proceed ings of an inferior tribunal so as to come to any satisfactory conclusion, unless the foundation Upon which the decree of the inferior tribunal rest?, is made to appear.
*225 'Exceptions were filed to tfie repo¡ , overruled by the court, except as to tlie allowance u. interest, and a decree rendered against Garner in favor of Beaty for $450 20 cents, subject to a credit of $42 50, and a decree in favor of Catron for $183 02, besides costs. To reverse these decrees Garner prosecutes appeals.
The first question worthy of consideration, relates to the admissibility of the depositions of Hawk and Evans. Their depositions were objected to upon the ground that they were incompetent witnes e , owing to their interest as partners. That they were incompetent to prove the extent of their own claims against tlie firm or partnership, is granted; but we cannot perceive any reason resulting from their terest, which should prevent their proving the extent of the claims of the other members of the firm, Their interest would operate, if at all, to induce them to diminish tlie amount of these claims. It is no objection to a witness that he swears against his interest. He ought, on that account, to be the more readily believed. Nor can Garner complain that Hawk proved the amount expended by hitn, because Garner was allowed, in the settlement and report of the auditors, a credit for half the amount of Hawn’s claim. This testimony is furnished by Beaty. It is to his clisad vantage, and he does not object to it. If Evans and Hawk, therefore, proved no more than the amount expended by the partner who might take" their depositions, we could not see any good ground of objection. But they go further, and attempt to diminish the amount of Garner’s claim So far as their depositions are calculated to have that effect, they would be promoting their own interest, and to that extent they were incompetent, and their depositions, that far, should have been disregarded. See Sharp vs. Morrow &c., 6 Mon. 305.
The report of the auditors and the decrees founded thereon, cannot be sustained. According to the case of Hammon and wife vs. Pearl &c. 6 Mon. 413, the evidence to sustain a decree must appear upon the record. Tiiis court cannot revise the proceedings of an inferior tribunal, and cotne to any *226 satisfactory conclusion, unless the foundation upon which the decree rests, is made to appear. There are ttiree items for $38 75, $78 63 and $111 88. all wed Beaty by the auditors,: s accruing in his layoff snice filing his bill. The ouly evidence in support of these items, is a statement in the report of the auditors, that proof was made before them of their correctness. This we conceive is not sufficient. What the witnesses deposed should he taken down and reported, and not the conclusions of the auditors, from the statements made by the witnessesc The court should base its decree upon the statenw n.s-of the witnesses, and not the conclusions of the auditors drawn from their statements. The testimony should he exhibited, so that the court tnay see that the conclusions of the auditors are correct.
Auditor must write down the itatenmnfs of the witnesses, th i in-i v l'e sw >rn before hioi, ami report to .tiie court the stat< ments of the witni>«s<'s, and not his conclusions •drawn from them.
But the principles upon which the report was made, are incorrect, and even if they were not, the decree is erroneous in not giving effect to the report as made. The auditors report the total amount of expenditure, in preparing to manufacture salt, at $4, 381 63. To make this aggregate, Beaty contribute'1^ according to the report, $2,339 28, Evans $310 71-, Catron $1,-9 J 13, Hawk $458 61, and Garner $73 87. Tiie auditors then give Beaty the benefit of the expenditure made by Evans, and by adding the two sums together, make a total of $2,650 02, whi.-h they regard Beatv to have advanced, being$459 20, more than half of the whole expenditure, and for this amount (except $9, which we supposed was omitted through mistake) the court decreed in favor of Beaty against Garner, subject to a credit for $42 50, that being the proceeds of the s.ale of some articles belonging to the firm, after paying the commissioner who sold them. The auditors reported that Beaty was chargeable .with $91, for a copper pipe which he had appropriated, and it seems that his account charges the firm with about that sum for a hopper pipe, purchased in Lexington, and the expense of hauling it to the well. He certainly should have been required to account for tills pipe so used by him.. Deducting the $91 from his account, and he would only be entitled to a decree for $368 20. *227 instead of $459 20, according to the report of the auditors.
The amount of Hawk’s account for labor done on the well, is equally divided between Catron and Garner, and their expenditures are thus increased by the labor of Hawk. In this way Catron’s expenditures by the report are made to exceed his just proportion by the sum of $333 02. The auditors find that Catron is indebted $150 to Garner, and they deduct this from the $333 02, leaving a balance of $183 02, for which the court rentier a decree in favor of Catron. Thus Catron gets the benefit of Hawk’s labor to the amount of $229 30. We cannot perceive any principle of law or justice, which authorizes Catron thus to appropriate to his use the labor of Hawk. Deprive him of this allowance, and then, according to the report, the excess of his expenditure over his just portion would be only $103 72; and if this were appropriated towards the discharge of what he owed Garner, there would be a balance against him of $46 28 in Garner’s favor. If Cart ron can appropriate to his use, in the settlement of the accounts of the firm, half of Dawk’s labor, will he be individually responsible to Hawk for the amount? Considering Hawk as the owuer of two shares out of twenty four, and as a partner, then his portion of the expense is one f velfth, or $365 13; his bill for work, which the auditors divided between Catron and Garner amounts to $458 61. Thus it seems that Hawk did work to the value of $93 48 more than his share of expenses •as a partner came to. This sum, instead of being decreed to Hawk, is given to Catron with a good deal more, when, hereafter, Hawk, as a partner, might set up a claim against all the partners lor this excess, and recover, unless the proceedings in this cause constituted a bar. We do not see how it. would bar his right when, in this case, he has asserted no claim, ami thus Garner might be again charged and compelled to pay money which is now decreed to Catron. The auditors have no doubt run into this error in consequence of the article of agreement between Beqty, Garner and Catron, having been signed by those three persons only. But the *228 previous agreement of 1816, gave Hawk an Interest which was not divested by the agreement of 1817, and upon no principle could Garner and Catron appropriate to themselves the labor of Hawk. The decree in favor of Catron is entirely erroneous.
On answer, in '»atur^ of a cross-hill, a subpoena mus' be issuod on"the°defendant thereto; un“ss *“e „0"ter anee on the record or ale his answer.
We consider it proper, in a case like the present, where a bill is filed to settle the accounts of the partnership, that each partner who has claims, should, if he intends to ask a decree in his favor, exhibit his claims in the pleadings in such a manner as to apPl’ize the party against whom the decree is sought, of their nature and extent. If this is attempted tó he done in an answer, filed in the nature of a cross bill, against a co-defendant, a regular practice, which we deem it best strictly to adhere to, requires the service of a subpoena issuing upon the cross bill; un]ess there has been a formal appearance entered on the record or answer filed. This seems not to have been done in the case of Catron vs. Garner.
As the record now presents itself, we look upon Beaty, Evans, Garner, Catron and Hawk, as having an interest, in the well, and we regard the expense incurred in preparing to manufacture salt, as a charge upon the whole of them, which should be borne in proportion to their interests.
Beaty should be held responsible for Evans, because Evans was let in under him, and without any consent on the part of Catron and Garner. At least none is shown by the record. Consequenty, if Evans had failed to pay his full portion of the expense, and Beatv had paid more than his share, he must look to Evans alone for indemnity, so far as Evans ought to have, contributed. And if the amount chargeable to Evans is not equal to indemnify Beatyq then he may have a decree against either Catron or Garner, or both, to the extent it. may be found they are in arrear in contributing their full por-; tions. The decrees to be severally rendered.
Upon the return of the cause, the court will recommit the report, so that it may be correctly ascertained how much each partner has expended in mak'm-; the itn -rovements. In.^doing this, the auditor? must lSjuct all testimony coming from any *229 one of the partners, which goes to establish his own account, or to diminish the account of any of the partners. So far he is an interested witness. But any one partner may make a witness of any other of the partners, to testify as to the amount of the partner calling him, but then the partner so called on, must not, in giving his testimony, attempt to establish his own account, or to diminish the account of a partner who has not called for his testimony. The partner calling for the testimony of a co-partner, risks the influence which the party called on may feel to diminish the claims of the partner calling him; but so far as the partner calle'i on establishes, by his testimony, a claim against the firm, he is swearing against his interest, and the evidence is, therefore, the more credible.
There are some inaccuracies and omissions in the present report, which we deem it proper to notice.
We perceive, in Beaty’s account, that he charges “for cash given to Evans to pay hands $15.” Much of Evans’ account is for payments made to hands. Has not tins $15 been claimed against the firm twice? Evans gives no credit for money received from Beaty to pay hands. Beaty charges $20 as paid to Hawk. Was this payment made on acconnt of work done by Hawk, over and above what he ought to have contribnted as a partner? If so, his account ought to have been credited by it. It was not; and thus we apprehend that the commissioners, in making up the aggregate expenses of the whole work in preparing to manufacture salt, have counted this sum twice.
It is proved that a considerable quantity of salt was made, and that Beaty appropriated it to his use. While he is allowed for payments made to the hands who manufactured the salt, surely he ought to have been charged with the profits of their labor, and the last set off against the first. Yet it was not done. We make these suggestions for the purpose of calling the attention of the parties to them upon the return of the cause; so that they may make their proof more precise, and that these subjects may be *230 disposed of on the investigation hereafter, as the proof theii made and justice shall require.
Monroe, for appellant.
Upon the return of the cause, the court may give the parties leave to amend their pleadings if applied for. Although there are numerous amendments, to the last they seem to have been groping their way.
Both decrees reversed with costs, and the cause remanded for proceedings not inconsistent with this opinion.